## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

_____

**MITZIE WYATT**                                )
                                                )
      **Plaintiff,**                        )
                                                )
      **v.**                                )       **Civil Action No. WGC-11-444**
                                                )
**WASHINGTON METROPOLITAN**                      )
**AREA TRANSIT AUTHORITY,** *et al.*             )
                                                )
      **Defendants.**                       )
_____)

### MEMORANDUM OPINION

Plaintiff Mitzie Wyatt ("Ms. Wyatt") brought this action against the Washington Metropolitan Area Transit Authority ("WMATA") and Sylvester Proctor ("Mr. Proctor") alleging negligence against each Defendant.  Ms. Wyatt was a passenger on the WMATA bus. Mr. Proctor operated a motorcycle which collided with the WMATA bus.  Jeannie Dawson ("Ms. Dawson") was the bus driver operating the WMATA bus which collided with Mr. Proctor's motorcycle.

The parties consented to proceed before a United States Magistrate Judge for all further proceedings in the case and the entry of a final judgment.  *See* ECF No. 27.  Pending before the Court and ready for resolution is Mr. Proctor's Motion for Summary Judgment (ECF No. 24). Ms. Wyatt filed a Response not contesting the motion for summary judgment filed by Mr. Proctor (ECF No. 26).  WMATA filed a Response in Opposition (ECF No. 28) and Mr. Proctor filed a Reply (ECF No. 30).  No hearing is deemed necessary and the Court now rules pursuant to Local Rule 105.6 (D. Md. 2011).

1

## BACKGROUND

In her Complaint Ms. Wyatt asserts the WMATA bus driver "made a left turn onto Parliament Place in front of Defendant Proctor's path causing a collision." Compl. ¶ 2. "Also at the same time and place, Defendant Sylvester Proctor, was traveling west on Martin Luther King Highway and struck the front right side of Defendant WMATA, causing a collision." *Id.* at 3. Ms. Wyatt describes the negligent conduct of WMATA as follows:

> The negligence of the Defendant, Washington Metropolitan Area Transit Authority, was the proximate cause of the accident in that said Defendant's agent negligently failed to yield the right-of-way, negligently failed to keep proper control of its vehicle, negligently failed to keep a proper lookout for other vehicles, negligently operated its vehicle at a speed too great for the conditions existing, and was otherwise careless and negligent, thereby causing a collision with the [motorcycle] operated by [Defendant, Sylvester Proctor].

*Id.* ¶ 6

Ms. Wyatt describes the negligent conduct of Mr. Proctor as follows:

> The negligence of the Defendant, Sylvester Proctor, was the proximate cause of the accident in that said Defendant negligently operated his motorcycle at a speed too great for the conditions existing, negligently failed to keep proper control of his motorcycle, negligently failed to keep a proper lookout for other vehicles, and was otherwise careless and negligent, thereby causing a collision with the motor vehicle owned and operated by Defendant WMATA.

*Id.* ¶ 8.

## JURISDICTION AND VENUE

This Court has original jurisdiction over this civil action based on Federal Question, 28 U.S.C. § 1331, specifically, pursuant to Section 81 of the WMATA Compact, Section 80 Stat. 1350, Pub. L. 89-774 (November 6, 1996), as outlined in Md. Code Ann., Transp. § 10-204(81), which states:

> The United States District Courts shall have original jurisdiction, concurrent with the courts of Maryland, Virginia and the District of Columbia, of all actions brought by or against the Authority and to enforce subpoenas issued under this title.  Any such action initiated in a State or District of Columbia court shall be removable to the appropriate United States District Court in the manner provided by Act of June 25, 1948, as amended (28 U.S.C. 1446).

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).  The Court notes WMATA removed this case from state court to federal court.  *See* ECF No. 1.

## STANDARD OF REVIEW

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(c); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each

element of his or her claim.  "[A] complete failure of proof concerning an essential element . . .

necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.

On those issues where the nonmoving party will have the burden of proof, it is that

party's responsibility to confront the motion for summary judgment with an affidavit or other

similar evidence.  *Anderson*, 477 U.S. at 256.  However, "'[a] mere scintilla of evidence is not

enough to create a fact issue.'"  *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984)

(quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388

F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959 (1968)).  There must be "sufficient evidence

favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted."

*Anderson*, 477 U.S. at 249-50 (citations omitted).

## DISCUSSION

Mr. Proctor asserts he is entitled to summary judgment because there is no evidence that

he was negligent in operating his motorcycle or that he violated any duty owed to Ms. Wyatt.

For instance, in answering interrogatories and at her deposition, Ms. Wyatt did not know the

speed of Mr. Proctor's motorcycle before the collision between his motorcycle and the WMATA

bus.  Ms. Wyatt was unable to quantify the rate of speed.

In support of his motion Mr. Proctor attaches the deposition transcript of Ms. Dawson

(the WMATA bus driver), the deposition transcript of Roxanne Jones, a non-party witness, and a

statement by Andrew Foy, another non-party witness.  Mr. Proctor notes the WMATA bus driver

did not indicate any acts or omissions by Mr. Proctor regarding the accident.  Ms. Jones, the non-

party witness operating a motor vehicle approximately three car lengths behind Mr. Proctor's

motorcycle, testified about the speed (45 miles per hour) at which she and Mr. Proctor traveled,

Mr. Proctor's use of the correct hand signals before the accident and the fact that Mr. Proctor had

no time to take any evasive action because the WMATA bus pulled out in front of Mr. Proctor's

motorcycle.  Third, Mr. Foy, the driver of the large box truck, stated Mr. Proctor had a fraction

of a second to respond when the WMATA bus made a left turn in front of him.  Mr. Foy opined

that he could not imagine what Mr. Proctor could have done to avoid the collision.

Finally Mr. Proctor notes that he previously sued WMATA as a result of the same

accident of April 9, 2008.  According to Mr. Proctor WMATA settled the lawsuit for a

significant amount of money.[1]

In its Opposition WMATA notes, on the day of the accident, Ms. Wyatt gave a signed,

verified statement to an investigating Prince George's County police officer.  Ms. Wyatt

described the collision as follows:

> Bus [was] turn[ing] from M[artin] L[uther] K[ing] [Highway] onto
> Washington Business Park.  A truck (white w/ tan writing) was
> stopped.  Bus turned and as it turned I saw that a bike was coming
> at a high speed.  At the same time (before you could say or do
> anything[)] it hit the bus full force.

ECF No. 28-3.

Another passenger on the WMATA bus, Christina Dodoo, also provided a signed,

verified statement to an investigating Prince George's County police officer on the day of the

accident.  During the January 23, 2009 deposition, Ms. Dodoo read her handwritten statement.

> Q:      Now, can you, for the record, so that when I go back to my
> office, can you read your handwriting, because it's not different
> from this typewritten one on number two, can you read your
> handwriting that is beginning with statement, under statement can
> you read for the court reporter out loud what you wrote?
>
> A:      Okay.  I was on the bus from 450 coming to Lottsford Vista
> Road when we reached 450 Annapolis we're turning to Business

---

[1] Mr. Proctor does not state that WMATA admitted liability in settling the prior litigation.  From the undersigned's experience, when a case settles, the party paying the "settlement" typically does not admit or deny liability.

Park a truck was on the left turning and the driver stopped.  Trying
to make a left turn.  All of a sudden we saw a motorcycle speeding,
hit the bus and the helmet and – – what is that – – some of his stuff
started flying all over the street.

ECF No. 28-4 (Dodoo Dep. 52:22 – 53:12).

Counsel further inquired about the "speeding" motorcycle.

Q:      [D]id you see a motorcycle speeding, those are your words,
before impact, yes or no?

A:      Yes.  He was speeding.

Q:      How fast was he going?

A:      I can't tell.

*Id.* (Dodoo Dep. 58:16 - 21).

WMATA notes that questions of primary negligence are generally reserved for a jury under Maryland law.  Conflicts and ambiguities should not be resolved on motions for summary judgment.  "Whether Co-Defendant Sylvester Proctor was 'speeding' under the circumstances and whether such 'speeding' constituted negligence and a proximate cause of Plaintiff's injuries and damages are issues for the jury."  ECF No. 28 at 5.

In his Reply Mr. Proctor argues WMATA takes two witness statements out of context to suggest Mr. Proctor's "speeding" may have contributed and/or caused the accident.  Mr. Proctor notes that both Ms. Wyatt and Ms. Dodoo subsequently elaborated on their signed, verified written statements given on the day of the accident.  At the January 21, 2009 deposition of Ms. Wyatt, counsel inquired further about Ms. Wyatt's statement that the motorcycle was "speeding."

Q:      Now, you conclude the sentence by saying "at a high
speed."  Those are your words.  Is that correct?

A:      Right.

6

Q:      What did you mean?

A:      It happened so fast.

Q:      I understand it happened so fast.  But when you say at a high speed, you're describing the motorcycle, correct?

A:      Right.

Q:      My question is, what did you mean by a high speed?

A:      There wasn't enough braking time.

\*                              \*                              \*

THE WITNESS:      I would say it seemed like [the motorcycle] was going fast and that it didn't have enough stopping room, braking room.

ECF No. 30 at 9, 12 (Wyatt Dep. 46:4 – 16, 49:1 – 3).

In an undated affidavit Ms. Dodoo clarified her verified, signed written statement of April 9, 2008 as follows:

The bus turned left in front of a motorcycle from the opposite direction.

I saw the motorcycle coming, but not for a period long enough to judge its speed.  The collision happened about one or two seconds after the bus turned left.  I simply cannot give an opinion as to its speed.  It seems like it was fast, but the speed limit on Martin Luther King Highway of 45 mph **IS** fast.

I cannot say that the motorcycle was going faster or slower than 45 mph immediately before impact.

*Id.* at 14 (Dodoo Aff.).

In support of his Reply Mr. Proctor attaches a portion of Ms. Dodoo's deposition transcript omitted by WMATA.  The quoted passage below picks up where WMATA's version of the deposition transcript, cited *supra*, ends.

Q:      Well, how do you know he was speeding?

A:      That's, he was just coming so that's the way I figure both of them are speeding, the driver, the bus driver was speeding, the motorcycle was coming.  So when I was writing that I probably was confused a little.  But it's supposed to be the driver, bus driver was the one speeding.  And the motorcycle was coming.

Q:      I understand that.

A:      So I can't tell – –

*                              *                              *

A:      We were on the bus, but the motorcycle was coming, and the driver, the bus driver was the one speeding.  She was speeding, she should have watched what she was doing because the van was on the left side and she's supposed to watch before turning.  But she wasn't watching.  And then the motorcycle was coming and then she hit the motorcycle.

*Id.* at 18 (Dodoo Dep. 58:22 – 59:9, 16 – 22).

The post-April 9, 2008 testimonies and affidavit by Ms. Wyatt and Ms. Dodoo tend to

support the observations by non-party witnesses Mr. Foy and Ms. Jones.  In an undated statement

Mr. Foy describes what he recalled and observed, stating in pertinent part:

I was on Martin Luther King Highway in the left turning lane, waiting to turn left.

I was driving a large box truck.

Coming from the opposite direction on the Martin Luther King Highway was a large bus.  This bus was also in the left turning lane.  Thus, my vehicle partially obstructed the bus driver's view of the traffic coming from behind me.

Suddenly, the bus began a left turn to go to Parliament Place.  When it did so, it turned directly into the path of oncoming traffic.  A fraction of one second after beginning to turn left the bus collided with a motorcyclist.  This motorcycle rider had less than one second to react to the bus driver's sudden turn in front of him.

After striking the motorcyclist, the bus continued across Martin Luther King Highway into Parliament Place, where it stopped.  The bus was driven by a female.

The motorcyclist came from behind me.  I saw him only for a fraction of a second before impact, and thus I am not able to estimate his speed in any manner.  Neither can I say if he took any evasive action, though with the fraction of one second he had to react I cannot imagine anything he could have done.  The motorcyclist had absolutely no chance to avoid this accident.

ECF No. 24-1 at 20.

Ms. Jones testified about a sequence of events similar to the sequence outlined in Mr.

Foy's statement.

Q:    And if you back up, say, a football field from where this accident happened, just tell us what happened.

A:    Okay.  Both of us [Ms. Jones and Mr. Proctor] were driving down the road.  And I remember we were both going 45.  And I remember seeing the bus to my left.  She was in a turning lane. Where she was you can just go straight across up the road into kind of like a business area.

And I remember watching her kind of inch forward and inch forward a little bit, like, you know, how when a bus is turning or when you're trying to move forward, you know, gauge – – and she just pulled right out in front of him.  There was no time to stop.

I remember it clear as day, because I thought, this man – – because I was watching it.  And I thought, he does not – – he's not even putting his brakes on.  He doesn't even know what is about to happen.  And I knew from then he was going to hit.  She was not going to make it across.  And sure enough he T-boned that bus right dead smack in the middle.

He hit full force.  There was no time to brake, no time for him to do anything.  And when he hit, it looked like his body flew headfirst, kind of like a donkey bucks, his back legs.  It looked like he went headfirst into the bus.

*Id.* at 17-18 (Jones Dep. 10:7 – 11:10).

9

The WMATA bus driver, Ms. Dawson, conceded the collision occurred within seconds of her turning the bus.

> Q:    Would it be fair to say that your view was blocked by the box truck?
>
> *                              *                              *
>
> THE WITNESS:   Yes.
>
> *                              *                              *
>
> Q:    And when you began your left turn, how long was it before there was impact with the motorcycle?
>
> A:    Within seconds.
>
> Q:    Did you see this motorcycle coming before the impact?
>
> A:    No.
>
> Q:    So, if you didn't see it coming, you have no way to judge its speed.  Is that correct?
>
> A:    I saw it moments before it hit.  I saw him try to slow down, and he fishtailed a little bit.  And then he just braced for the impact.  So I did see that.

*Id.* at 11-12 (Dawson Dep. 10:8 – 9, 11, 13 – 11:3).

WMATA opposes Mr. Proctor's motion for summary judgment on the ground that Mr. Proctor's rate of speed was a proximate cause of Ms. Wyatt's injury.  Maryland law recognizes that several negligent acts may work together to cause an injury.  *See Carroll v. Konits*, 400 Md. 167, 205, 929 A.2d 19, 42 (2007) ("It is well settled that several negligent acts may work together to cause an injury, and that each person whose negligent act is a cause of an injury may be legally responsible.").  On the day of the accident two witnesses on the WMATA bus, including Ms. Wyatt, described Mr. Proctor's operation of the motorcycle as "speeding" or riding at a "high speed."  The subsequent clarifications of these statements raise credibility

10

issues, matters proper for a jury to resolve, and not this Court at the summary judgment stage. Because the issue of the motorcycle's speed is disputed, a jury must decide whether the rate at which Mr. Proctor's motorcycle was traveling was a proximate cause of Ms. Wyatt's injuries sustained on April 9, 2008.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court finds there are genuine issues as to a material fact and thus Mr. Proctor is not entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An Order will be entered separately denying Mr. Proctor's motion for summary judgment.


 April 11, 2012                              /s/                       
           Date                                    WILLIAM CONNELLY
                                     UNITED STATES MAGISTRATE JUDGE